UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **Cary B. Cohen**, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v.                                     ) | Civil Action No. 1:06cv441 |
| ) | |
| **Sheehy Honda of Alexandria, Inc.,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## MEMORANDUM OPINION

This matter is before the court on defendant's motion for summary judgment (docket no. 25). Defendant's motion has been fully briefed and argued. For the following reasons, the court finds that there are no genuine issues of material fact for trial, and that defendant is entitled to summary judgment.

## SUMMARY OF FACTS

Plaintiff, a Jewish male, sues his former employer alleging wrongful termination and religious discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. Plaintiff began employment with the Sheehy organization as an automobile sales consultant in July 2001 and was hired at the Alexandria location in February 2004. He was terminated on August 11, 2004. At all relevant times, the general manager of Sheehy Alexandria was Daniel Wernitznig, a male of German descent whose religion is Protestant Christian.

Plaintiff's two-count complaint alleges that he was treated adversely and eventually terminated because he is Jewish. Count I of the complaint alleges wrongful termination in violation of Title VII. Plaintiff alleged in his complaint that he was informed by Wernitznig that

he was being fired because he is Jewish. In deposition testimony, plaintiff refined his story to allege that on the day he was fired, Wernitznig made a comment which seemed to indicate that plaintiff had been fired because he is Jewish. Plaintiff testified that after he had been told by his sales manager, Eric Willis, that he was being fired, he went to see Wernitznig to turn in his dealer tag. He asked Wernitznig why he had been fired, and alleges that "under his breath, directly to me . . . [Wernitznig] said 'Jew'" (Pl.'s Ex. 1, p. 67). Wernitznig denies making this statement (Def.'s Ex. 2).

Count II alleges violation of Title VII based on a series of adverse actions which were allegedly taken against plaintiff and not taken against other similarly situated employees during the time that plaintiff worked for defendant. Plaintiff alleges the following discriminatory actions taken by defendant: that plaintiff was not given a "house deal"[1] after receiving a complimentary letter from a customer; was not given the opportunity for additional training after receiving a poor performance evaluation; did not receive compensation of $500 for giving a presentation on fire safety; had his dealer plates briefly taken away from him; was denied the opportunity to buy a car from the dealership; and was not allowed full access to his 401(k) plan.

Defendant offers two explanations for plaintiff's termination. The first is poor job performance. Plaintiff sold five cars in June, three cars in July, and one car in August before being fired. Defendant avers that eight car sales per month is the minimally acceptable level for its employees, and plaintiff said in his deposition that he "did not disagree" with the proposition that he had to sell more cars (Pl.'s Ex. 1, p. 47). The second explanation is a phone conversation between plaintiff and someone who called defendant's customer service line. During the phone

---

[1] This is an arrangement in which a manager initiates a sale but a salesman is given credit for the sale.

call, plaintiff misrepresented the availability of a certain car model, seemed to mock the caller's poor cell phone reception, and hung up on the caller. Defendant argues this call was between plaintiff and a customer and was highly inappropriate; plaintiff says he thought the call was a "test call" between himself and a member of defendant's management named Roy Reuter, and was merely a joke. Reuter denies participating in the call (Def.'s Ex. 9).

Defendant also argues that plaintiff was fired by the sales manager, Eric Willis, and that while Wernitznig oversees personnel decisions as general manager, he did not make the decision to fire plaintiff and was not significantly involved in the termination process.

## **LEGAL STANDARDS**

Title VII makes it "an unlawful employment practice for an employer . . . to discharge . . . or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1).

A party is entitled to summary judgment if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, the court must first consider whether there are any issues of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the court must assess the factual evidence and all inferences must be drawn in the light most favorable to the non-moving party. *See Id.* at 255.

Summary judgment is appropriate when a party who will bear the burden at trial fails to make a showing sufficient to establish an essential element of the case. *Laughlin v. Metropolitan Wash. Airports Auth.*, 149 F.3d 253, 258 (4th Cir. 1998). In order to defeat a summary judgment

motion, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).

## ANALYSIS

Plaintiff has failed to allege facts from which a reasonable jury could conclude that he was fired because he is Jewish. *See Henson v. Leggett Group Inc.*, 61 F.3d 270, 277 (4th Cir. 1995) (upholding summary judgment where plaintiff failed to create a genuine issue of material fact as to the ultimate question whether her employer intentionally discriminated against her). Plaintiff has failed to carry his burden of "proffer[ing] sufficient proof, in the form of admissible evidence, that could carry the burden of proof of this claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993).

Plaintiff has offered almost no evidence of any religious animus or discriminatory motive on the part of defendant. Throughout his deposition, plaintiff mentioned his feeling or belief that Wernitznig is a racist. However, "[c]onclusory assertions that the employer's state of mind and motivation are in dispute are not enough to withstand summary judgment." *Goldberg v. B. Green and Co., Inc.*, 836 F.2d 845, 848 (4th Cir. 1988).

Plaintiff's only concrete piece of evidence of any discriminatory motive is the comment allegedly made by Wernitznig.[2]  In their briefs attending the summary judgment motion, the parties argue the case under the burden shifting, pretext framework of *McDonnell Douglas Corp.*

---

[2]In addition to Wernitznig's alleged comment, plaintiff does also offer as evidence a phone message left by Scott Miller, an acquaintance of Wernitznig and former employee of defendant, in which Miller refers to Wernitznig as "Dan the Nazi." Assuming that evidence of this comment is admissible, it is not a strong piece of evidence. The comment occurred long after plaintiff's termination and was made by a person whose relationship to the facts of this case is tenuous at best.

*v. Green*, 411 U.S. 248, 252-53 (1981).  *See Hill v. Lockheed Martin Logistics Management, Inc.*, 354 F.3d 277, 284-86 (4th Cir. 2004) (explaining that in a claim for intentional discrimination, a plaintiff has "two avenues of proof" to avert summary judgment, demonstration of a discriminatory motivation through direct or circumstantial evidence, or the pretext framework).[3]  In every employment discrimination case, "[t]he ultimate question . . . is whether the plaintiff was the victim of intentional discrimination." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 153 (2000).  Plaintiff must produce sufficient evidence upon which one could find that "the protected trait . . . actually motivated the employer's decision." *Id.* at 141.

**Count I: Plaintiff Has Failed to Demonstrate Pretext.**

When the evidence is analyzed under the *McDonnell Douglas* burden shifting framework, as the parties have done, plaintiff has failed to show that defendant's valid, nondiscriminatory reasons for terminating him were not its true reasons but a pretext for discrimination.  *See Reeves*, 530 U.S. at 143.  Under the pretext framework, the employee must first establish a *prima facie* case of discrimination.  "To demonstrate the *prima facie* case of . . . discrimination under the pretext framework, the plaintiff must show that (1) [he] is a member of a protected class; (2) [he] suffered adverse employment action; (3) [he] was performing [his] job duties at a level that met [his] employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class." *Hill*, 354 F.3d at 285.  The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  *McDonnell Douglas*, 411 U.S. at 807.  Assuming the employer meets this burden of production, the burden then shifts

---

[3]The comment arguably could also be regarded as direct evidence of discriminatory intent.  Defendant states in its summary judgment brief that plaintiff has no direct evidence.  At no point does plaintiff's brief argue otherwise, and plaintiff did not offer oral argument.

back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons "were not its true reasons, but were a pretext for discrimination." *Reeves*, 530 U.S. at 143.

Even assuming plaintiff in this case has made out a *prima facie* case of discriminatory wrongful termination, which defendant disputes, plaintiff has not offered sufficient evidence to rebut defendant's contention that plaintiff was fired because of poor job performance.  Plaintiff does argue that over the full time he was employed by defendant, his car sales averaged to 7.4 per month.  There is also a disagreement about who was on the line when plaintiff engaged in the questionable phone call.  Neither of these quarrels regard a material fact sufficient to bring this case to a jury.  An average of 7.4 car sales per month is still below the minimally acceptable level of eight, and in the months leading up to plaintiff's termination his sales were well below that level and trending downward.  It is undisputed that plaintiff's direct supervisor, Eric Willis, whom plaintiff does not accuse of discrimination, had voiced concerns about plaintiff's performance.  Even if the phone call was between plaintiff and a member of defendant's management and not a customer, it displayed poor judgment at best.  Plaintiff has provided only a "scintilla of evidence" that defendant's stated reasons for firing him were a pretext designed to hide a discriminatory motive.

There is a dispute about whether the comment by Wernitznig was made, and plaintiff argues that this provides a sufficient dispute about a material fact to withstand summary judgment.  To avoid this result, defendant cites to the Fourth Circuit's unpublished decision in *Lowry v. Bedford County School Board*, 1999 WL 507137 (4th Cir. 1999) for the proposition that an allegation of one comment evidencing discriminatory animus, even if taken as true for the purposes of summary judgment, is not sufficient where the record is otherwise bereft of evidence

showing discriminatory motive. In *Lowry* the plaintiff challenged the district court's finding that the defendant's proffered reason for firing him was not a pretext. The plaintiff alleged in his own affidavit that on one occasion his shop foreman made a racial slur about another black employee, which comment was the "only evidence offered by Lowry of any racial bias toward him." *Id*. at *3. The court concluded that "No reasonable fact-finder would dismiss the proffered justifications for the adverse employment decision taken against Lowry in favor of the unsupported assertion by Lowry that one alleged racial slur by a foreman demonstrates racial bias by the School Board's decision-makers." *Id*.

      The facts of the instant action are not significantly distinguishable from *Lowry*. In this case, the comment was allegedly made directly to plaintiff, instead of to another person, and was made on the same day that plaintiff was fired. However, the reasoning of *Lowry* applies to the instant case. One uncorroborated comment, supported only by plaintiff's testimony and his general opinion that his boss is a racist, is simply not enough to carry his claim to a jury, especially where the legitimate reasons for termination proffered by defendant are supported by the record and plaintiff's own statements. *See Reeves*, 530 U.S. at 148 (holding that the "the probative value of the proof that the employer's explanation is false" is an important facet of assessing a plaintiff's claim of pretext). Plaintiff does not offer allegations of other comments made by Wernitiznig or other employees of defendant, declarations by other employees of a discriminatory attitude in the workplace, or any other stilt of evidence to hold up his claim. Even drawing all permissible inferences in plaintiff's favor, the court concludes that no reasonable jury could find on this record that animus towards Jewish people was a motivating factor in plaintiff's termination.

**Count II: Plaintiff has Failed to Allege a *Prima Facie* Case of Illegal Discrimination.**

In Count II, plaintiff argues that each in a series of incidents that took place prior to his termination, *see supra* p. 2, constitute an actionable adverse employment action. For conduct that falls short of an "ultimate employment decision" to be an adverse employment action, the conduct must detrimentally impact the *material* terms of the plaintiff's present employment or his prospect for advancement. *See James v. Booz-Hamilton*, 368 F.3d 371, 376 (4th Cir. 2004) (emphasis added). The court finds that as to these incidents, plaintiff has failed to make out a *prima facie* case of discrimination, because they do not constitute "adverse employment actions" under Fourth Circuit precedent. The minor benefits which plaintiff did not receive can best be described as "perks" which were within the discretion of his employer to grant or withhold, and their denial was not an adverse employment action which "decreas[ed] compensation, job title, level or responsibility, or opportunity for promotion." *Id*. While several of the actions complained of did minimally affect his compensation or prospects of advancement, such as failure to receive one "house deal" or $500 for putting on a fire-safety presentation, these are not the kinds of "material" adverse changes to employment envisioned by the law.

## CONCLUSION

For these reasons, the court grants defendant's motion for summary judgment as to both counts of the complaint. An order to that effect accompanies this opinion.

/s/<br>
Thomas Rawles Jones, Jr.<br>
United States Magistrate Judge

March 5, 2007
Alexandria, Virginia